## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JEFFERY GERBITZ, on his own behalf and on behalf of all others similarly situated, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 12-1670-LPS |
| | : | |
| ING BANK, FSB D/B/A/ ING DIRECT, | : | |
| | : | |
| Defendant. | : | |

Jeffrey S. Goddess, P. Bradford deLeeuw, ROSENTHAL, MONHAIT & GODDESS, P.A., Wilmington, DE

Jonathan D. Selbin, Jason L. Lichtman, Daniel R. Leathers, LIEFF CABRASER HEIMANN & BERNSTEIN, LLP, New York, NY

Daniel M. Hutchinson, LIEFF CABRASER HEIMANN & BERNSTEIN, LLP, San Francisco, CA

David P. Meyer, Matthew R. Wilson, MEYER WILSON, CO., LPA, Columbus, OH

     Attorneys for Plaintiff.


R. Montgomery Donaldson, Lisa Zwally Brown, MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP, Wilmington, DE

Frank A. Hirsch, Jr., Matthew P. McGuire, Heather Adams, Ryan P. Ethridge, ALSTON & BIRD LLP, Durham, NC

James F. McCabe, James R. McGuire, Benjamin F. Patterson, Sarah N. Davis, MORRISON & FOERSTER LLP, San Francisco, CA

     Attorneys for Defendant.

---

## MEMORANDUM OPINION

September 19, 2013
Wilmington, Delaware

**STARK, U.S. District Judge:**

Presently before the Court is the Motion to Dismiss Class Action Complaint and for More Definite Statement filed by Defendant ING Bank, fsb d/b/a/ ING Direct ("ING" or "Defendant"). (D.I. 8)  For the reasons discussed below, the Court will deny in part and grant in part the motion.

## I.    BACKGROUND

Jeffery Gerbitz ("Gerbitz" or "Plaintiff") filed the present action on December 7, 2012 on behalf of himself and all other similarly situated individuals.  (D.I. 1 at ¶ 1)  In his complaint, Gerbitz states that in or around October 2005, ING began marketing Orange Loans with a Rate Renewal Guarantee.  (*Id.* at ¶ 2)  Gerbitz contends that the Orange Loans were marketed with a $500 Rate Renew Guarantee from about October 2005 through May 2008, and a $750 Rate Renew Guarantee from about May 2008 through April 2009.  (*Id.*)  Gerbitz obtained an Orange Loan in or around September 2007.  (*Id.* at ¶ 36)  Contending that ING failed to honor the Rate Renew Guarantee, Gerbitz asserts four causes of action, alleging violations of: (1) California's Consumers Legal Remedies Act ("CLRA"); (2) California's Unfair Competition Law ("UCL"); (3) the Implied Covenant of Good Faith and Fair Dealing; and (4) Delaware's Consumer Fraud Act ("DCFA").  (*Id.* at 15-22)

On January 28, 2013, ING filed the motion to dismiss.  The parties completed briefing on March 18, 2013 and the Court heard oral argument on June 18, 2013.  (D.I. 23) ( "Tr.")

## II.    LEGAL STANDARDS

The sufficiency of pleadings for non-fraud cases is governed by Rule 8 of the Federal Rules of Civil Procedure, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  When presented with a Rule 12(b)(6) motion to dismiss for failure to state a claim, courts conduct a two-part analysis.  *See Fowler v. UPMC Shadyside*, 578

F.3d 203, 210 (3d Cir. 2009). First, courts separate the factual and legal elements of a claim,

accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal

conclusions." *Id.* at 210-11. This step requires courts to draw all reasonable inferences in favor

of the non-moving party. *See Maio v. Aetna, Inc.*, 221 F.3d 472, 500 (3d Cir. 2000).

However, courts are not obligated to accept as true "bald assertions," *Morse v. Lower Merion*

*Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997), "unsupported conclusions and unwarranted

inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir.

1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir.

1996).

Second, courts determine "whether the facts alleged in the complaint are sufficient to

show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). A claim is facially plausible "when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This is a context-specific

determination, requiring the court "to draw on its judicial experience and common sense." *Id.* at

679. At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that

discovery will reveal evidence of [each] necessary element" of a claim. *Wilkerson v. New Media*

*Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

"[W]hen the allegations in a complaint, however true, could not raise a claim of

entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum

expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 558 (2007) (internal quotation marks omitted). Although a non-fraud claim need not

2

be plead with particularity or specificity, such a claim must "give the defendant fair notice of

what the . . . claim is and the grounds upon which it rests." *Id.* at 555.

In pertinent part, Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud

. . . a party must state with particularity the circumstances constituting fraud . . . . Malice, intent,

knowledge, and other conditions of a person's mind may be alleged generally." The purpose of

Rule 9(b) is to provide defendants with notice of the precise nature of the claim against them, not

to test the factual allegations of the claim. *See Seville Indus. Mach. Corp. v. Southmost Mach.*

*Corp.*, 742 F.2d 786, 791 (3d Cir. 1984). Although date, place, and time allegations may fulfill

the requirement of pleading with particularity, these types of allegations are not required to

satisfy Rule 9(b), so long as the circumstances of the alleged fraud are pled sufficiently "to place

the defendants on notice of the precise misconduct with which they are charged, and to safeguard

defendants against spurious charges of immoral and fraudulent behavior." *Id.*

## III. DISCUSSION

### A. Motion to Dismiss: Generally

Defendant argues that the Court should ignore Plaintiff's allegations in the complaint

that: (1) the Orange Loans "necessarily included and were marketed with a guaranteed right to a

flat-fee 'rate renew' for $500 or $750 for the remaining life of the loan (the 'Rate Renew

Guarantee');" and (2) ING's advertising and marketing gave rise to the purported guarantee. In

support of its position, Defendant submits loan documents, a Deed of Trust (D.I. 10 Ex. A), and

Agreements to Modify Note (*id.* Exs. C, E). Plaintiff contends that Defendant should have

moved for summary judgment if it intended to rely on these documents. (D.I. 13 at 5)

Pursuant to Federal Rule of Civil Procedure 12(d), "[i]f, on a motion under Rule 12(b)(6)

3

. . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." This is known as "conversion." *See In re Rockefeller Ctr. Props., Inc. Secs. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). However, a court faced with a motion to dismiss may consider a document outside the pleadings without converting the motion if the document is "undisputedly authentic" and "the plaintiff's claims are based on the document." *Pension Benefit Guar. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993).

The documents relied upon by Defendant are undisputedly authentic. (Tr. at 23, 47) Further, Plaintiff's claims – particularly the breach of implied covenant of good faith and fair dealing claim – are based, in part, on the documents. Plaintiff's complaint alleges that "[a]s a result of ING's misrepresentations regarding the Rate Renew Guarantee, Plaintiff and Class members entered into, and duly executed, a binding contract with ING in the form of Orange and Easy Orange Loans." (D.I. 1 at ¶ 103) Because the documents have been "explicitly relied upon" in the complaint, the Court will not convert the motion. *See In re Rockefeller Center Properties, Inc. Securities Litigation*, 184 F.3d 280, 292 (3d Cir. 1999).

ING argues that its documents contradict Plaintiff's allegation that the Orange Loans "necessarily [included and] were marketed with a guaranteed right to a flat-fee 'rate renew' for $500 or $750 for the remaining life of the loan (the 'Rate Renew Guarantee')."[1] (D.I. 1 at ¶ 1) The Court does not agree. Taking Plaintiff's well-pleaded allegations as true, and considering

---

[1]Plaintiff is not alleging that the loan documents actually contained the Rage Renew Guarantee and, at the hearing, agreed to remove "included and" from the complaint. (Tr. at 39) With this concession, it appears that Defendant no longer asks the Court to consider the loan documents in connection with the pending motion. (*See id.* at 23)

4

the marketing documents in the light most favorable to Plaintiff, the Court concludes that

Plaintiff has adequately alleged facts to support its claim that ING's marketing materials gave

rise to the Rate Renew Guarantee. *See generally Sateriale v. R.J. Reynolds Tobacco Co.*, 697

F.3d 777, 787-88 (9th Cir. 2012) (holding that advertisement intended to induce customers to

enter into contract could constitute offer when reasonably believed that contract would be

formed).

**B.    Motion to Dismiss: Pleading Fraud with Sufficient Particularity**

Defendant next argues that the Court should grant its motion to dismiss because

Plaintiff's complaint is, in essence, a fraud action, but it fails to meet the pleading standard

required by Federal Rule of Civil Procedure 9(b).  (D.I. 9 at 6)  Plaintiff responds that the

complaint satisfies Rule 9(b) because it provides sufficient notice to Defendant, *see Seville*, 742

F.2d at 791, and it pleads the fraud claims with sufficient particularity.

In the complaint, Plaintiff has explicitly pled "the who, what, where, when, how, and

why" of its fraud claims, alleging:

- a.    *Who*: Defendant ING.

- b.    *What*: ING expressly represented that Orange and Easy
  Orange Loans came with a Rate Renew Guarantee (that
  ING has not honored) by stating, *inter alia*: . . . Extend
  your fixed-rate period any time after the first six months for
  another 5 years by locking in at the current rate for only
  $750. . . .

- c.    *When*: Starting no later than October 2005, and on an
  ongoing basis through at least April 23, 2009.

- d.    *Where*: On ING's website and in advertisements and
  letters distributed to Plaintiff, Class members, and the
  public.

5

    e.    ***How***: ING has affirmatively misrepresented in writing that the Orange and Easy Orange Loans come with a Rate Renew Guarantee (that ING has not honored).

    f.    ***Why***: For the purpose of inducing Plaintiff and Class members to purchase the Orange and Easy Orange Loans, rather than choosing competitors' mortgage loans. Had ING disclosed the truth, Plaintiff and Class members would not have purchased and/or retained their home loans from ING or would have negotiated different terms.

(D.I. 1 at ¶ 46) Further, Plaintiff has provided examples of ING advertisements (in place of the actual advertisements received by Plaintiff because he is no longer in possession of them). (D.I. 1 Exs. A, B; Tr. at 31) Although the advertisements supporting the complaint postdate the time when Plaintiff obtained his ING loan, the complaint alleges that Plaintiff saw an ING advertisement containing the Rate Renew Guarantee prior to purchasing his loan. (D.I. 1 at ¶ 36)

      Plaintiff has met the pleading standard of Rule 9(b) and has provided Defendant sufficient notice as to the "misconduct with which it is charged." *DiMare v. MetLife Ins. Co.*, 369 F. App'x 324, 329 (3d Cir. Mar. 4, 2010). *See also generally Faigman v. AT&T Mobility LLC*, 2007 WL 2088561, at *5 (N.D. Cal. July 18, 2007) (finding that use of representative examples of advertising containing language similar to that attacked by complaint is sufficient to satisfy heightened pleading standard of Rule 9(b)). At the close of the June hearing, Defendant stated that it simply wanted to know what type of case to defend. (Tr. at 55) The Court is satisfied that the complaint, attached advertisement samples, and Plaintiff's representation that the case is based on an "express misrepresentation" made by ING promising a rate renew guarantee, combine to provide Defendant with sufficient notice of the claims against it. (*Id.* at 25-26) Thus, the Court will deny the motion to dismiss to the extent it is based on Rule 9(b).

### C.   Claim-Specific Issues

#### 1.   CLRA

Defendant argues that California's Consumer Legal Remedies Act, or CLRA, does not

apply to loan transactions and, therefore, Plaintiff cannot state a claim on which relief may be

granted. (D.I. 9 at 7)  Plaintiff responds that whether a loan falls within the CLRA is "an open

question of California law." (D.I. 13 at 9)  For the reasons discussed below, the Court will grant

the motion with respect to the CLRA claim.

The CLRA "prohibits specified unfair and deceptive acts and practices in a 'transaction

intended to result or which results in the sale or lease of goods or services to any consumer.'"

*Fairbanks v. Superior Court*, 205 P.3d 201, 202 (Cal. 2009) (quoting Cal. Civ. Code § 1770(a)).

The CLRA defines "goods" as "tangible chattels bought or leased," and "services" as "work,

labor, and services for other than a commercial or business use, including services furnished in

connection with the sale or repair of goods." Cal. Civ. Code § 1761(a), (b).

Historically, claims arising out of financial transactions, including mortgage loans, were

properly brought under the CLRA because they typically involved additional services beyond a

credit transaction. *See Becker v. Wells Fargo Bank, N.A., Inc.*, 2011 WL 1103439, at *13 (E.D.

Cal. Mar. 22, 2011) (collecting cases in which a "defendant provided additional services over and

above the extension of credit" and were found subject to CLRA).  In 2009, the California

Supreme Court addressed whether a financial transaction, specifically life insurance, was subject

to the CLRA. *See Fairbanks*, 205 P.3d at 202.  The Court concluded that life insurance, a

contract of indemnity in exchange for premium payments, was not a "good" or "service" under

the CLRA. *See id.* at 203.  The Court explained that ancillary services could not bring life

7

insurance policies within the coverage of the CLRA because "[u]sing the existence of these ancillary services . . . would defeat the apparent legislative intent in limiting the definition of 'goods' to include only 'tangible chattels.'" *Id.* at 206.

After *Fairbanks*, Plaintiff argues that district courts disagree as to whether mortgage loans are protected under the CLRA. *Compare Palestini v. Homecomings Fin., LLC*, 2010 WL 3339459, at *11 (S.D. Cal. Aug. 23, 2010) ("Since *Fairbanks*, courts have held that the CLRA is inapplicable to mortgage loans and the ancillary services related to them."), *with Rex v. Chase Home Fin. LLC*, 905 F. Supp. 2d 1111, 1156 (C.D. Cal. 2012) ("[A]fter *Fairbanks*, courts in this district have concluded that the CLRA does indeed apply to a real estate transaction where the lenders' interaction with the borrower goes ***beyond*** a contract to exten[d] credit.") (internal quotation marks omitted) (emphasis in original).

To the extent that there is disagreement among the courts, this Court agrees with those decisions, like *Palestini*, that conclude the California Supreme Court would find the service of mortgage loans to be outside the scope of the CLRA. *See, e.g., Becker*, 2011 WL 1103439, at *14 ("Accordingly, pursuant to these post-*Fairbanks* authorities, the CLRA does not encompass plaintiff's claims arising from his attempted [mortgage] loan modification."). While *Rex* cites to *Fairbanks* in its analysis, it ultimately relies on cases that predate *Fairbanks*. *See Rex*, 905 F. Supp. 2d at 1156 (following "line of cases" that includes *Hernandez v. Hilltop Fin. Mortg., Inc.*, 622 F. Supp. 2d 842 (N.D. Cal. Oct. 22, 2007); *Hernandez v. Sutter West Capital*, 2010 WL 539133, at *4 (N.D. Cal. Feb. 8, 2010) (relying on 2007 *Hernandez v. Hilltop* case); *Jefferson v. Chase Home Fin. LLC*, 2007 WL 1302984, at *3 (N.D. Cal. May 3, 2007); and *Knox v. Ameriquest Mortg. Co.*, 2005 WL 1910927, at *4 (N.D. Cal. Aug. 10, 2005)). Similarly, the

cases cited by Plaintiff do not rely on *Fairbanks*, but instead rely on pre-*Fairbanks* law. *See, e.g., Ortiz v. Wells Fargo Bank, N.A.*, 2011 WL 4952979, at *6 (N.D. Cal. May 27, 2011) (relying on 2007 *Hernandez v. Hilltop*); *Hernandez v. Sutter*, 2010 WL 539133, at *4 (same).

The Court is not persuaded that Plaintiff's loan is distinguishable from life insurance simply because it may involve "ongoing interactions each time a refinancing need arises." (D.I. 13 at 11) *Fairbanks* makes clear that such ancillary services, including maintenance or other customer services, do not transform an intangible service into a tangible good or service under the CLRA. Thus, the Court will grant Defendant's motion to dismiss Plaintiff's claim under the CLRA.[2]

### 2. UCL

California's Unfair Competition Law, or UCL, prohibits three types of practices: (1) unlawful; (2) unfair; and (3) fraudulent. *See* Cal. Bus. & Prof. Code §§ 17200, *et seq*. Plaintiff must adequately allege at least one of these types of prohibited practices to overcome Defendant's motion to dismiss. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009). The Court concludes that Plaintiff meets the fraudulent and unfair prongs of the UCL and will, therefore, deny Defendant's motion to dismiss the UCL claim.[3]

As discussed above, the Court concludes that Plaintiff has met the pleading standard

---

[2]Plaintiff requests leave to amend the complaint to assert common law fraud claims in the event that the Court concludes that the CLRA does not apply to this case. (D.I. 13 at 2; Tr. at 37) Defendant does not oppose the request (Tr. at 18-19), so the Court will grant Plaintiff leave to amend.

[3]The unlawful prong, however, is not met, as the alleged "unlawful" practice is the purported violation of the CLRA (D.I. 1 at ¶ 71), a claim which the Court is dismissing. *See Mejia v. EMC Mortg. Corp.*, 2012 WL 367364, at *5 (C.D. Cal. Feb. 2, 2012) (dismissing UCL claim based on CLRA's inapplicability to mortgage loans).

under Rule 9(b), which also satisfies the fraudulent prong of a UCL claim. Plaintiff has also met
the unfair prong of the UCL. There are three tests for determining whether a practice is unfair:
(1) the "balancing test," which considers the practice's "impact on its alleged victim" and "the
reasons . . . of the alleged wrongdoer;" (2) the "FTC test," which requires that "the consumer
injury must be substantial," "the injury must not be outweighed by any countervailing benefits to
consumers or competition," and "it must be an injury that consumers themselves could not
reasonably have avoided;" and (3) the "tethering test," which requires that the public policy upon
which the claim is predicated must be "tethered to specific constitutional, statutory or regulatory
provisions."[4] *In re Ins. Installment Fee Cases*, 150 Cal. Rptr. 3d 618, 635-36 (Cal. App. Dep't
Super. Ct. 2012) (internal quotation marks omitted). (Tr. at 35)

Defendant's contention that Plaintiff fails to meet the balancing test is based on
Defendant's contention that the complaint fails to satisfy the pleading standards of Rule 9(b), a
proposition with which the Court has already disagreed. Therefore, the unfair practice allegation
at least meets the balancing test, so, again, the Court will not dismiss the UCL claim.

### 3.    Implied Covenant of Good Faith and Fair Dealing

Defendant argues that Plaintiff's complaint fails to state a claim for violation of the
implied covenant of good faith and fair dealing for three reasons: (1) Plaintiff fails to state with
sufficient particularity that there was a "guarantee;" (2) the claim is based on pre-contractual
conduct, which cannot support a breach argument; and (3) the express terms of the contract

---

[4]The Ninth Circuit has observed that "the proper definition of 'unfair' conduct against
consumers 'is currently in flux' among California courts." *Davis v. HSBC Bank Nevada*, 691
F.3d 1152, 1169 (9th Cir. 2012). Neither party requests the Court to resolve which test governs;
instead, both parties contend that Plaintiff either fails or meets all three tests. (D.I. 9 at 10; D.I.
13 at 13)

10

preclude a good faith and fair dealing claim. (D.I. 9 at 15)

The Court does not agree. As discussed above, Plaintiff adequately pleads that the marketing materials created a Rate Renew Guarantee. *See Sateriale*, 697 F.3d at 787-88. With respect to Defendant's third reason, the Court finds this case analogous to *In re Chase Bank*, 2009 WL 4063349, at *7-8 (N.D. Cal. Nov. 20, 2009), in which a motion to dismiss was denied. In *Chase Bank*, the plaintiffs' claims – which were based on Delaware law – arose from defendants' unilateral decision to increase the minimum monthly payment on a credit card from 2% to 5% of the balance. *See id.* at *7. Rejecting defendants' argument that the implied covenant could not trump the parties' express contractual reservation of the defendants' right to modify the terms of the contract, the Court held that defendants' right to modify was subject to the implied covenant of good faith and fair dealing. *See id.* at *8. Moreover, whether defendants' conduct "frustrate[d] the overarching purpose of the contract" was a fact-based defense, inappropriate for resolution on a motion to dismiss. *Id.* at *8; *see also IndyMac Fed. Bank, F.S.B. v. PMI Mortg. Ins. Co.*, 2009 WL 331451, at *2-3 (N.D. Cal. Feb. 11, 2009) ("The implied covenant is not concerned with the technical permissiveness of conduct pursuant to a contract, it is concerned with assuring that all conduct related to receiving the benefits of the contract is done in good faith.").

Here, as in *Chase Bank*, ING's fact based-defense is not appropriately resolved at the motion to dismiss stage of the proceedings. Plaintiff has sufficiently pled that Defendant breached the implied covenant when it unilaterally modified terms of the loans. The modification "prevent[ed] Plaintiff and the Class from receiving the benefits of the Rate Renew Guarantee," "violat[ing] the spirit of the agreements." (D.I. 1 at ¶ 105) Therefore, the Court will

11

deny the motion to dismiss the implied covenant of good faith and fair dealing claim.[5]

## IV.   CONCLUSION

For the reasons given above, the Court will deny in part and grant in part Defendant's

Motion to Dismiss.  An appropriate Order follows.

---

[5]The parties agree that, given the Court's decision in the related case of *Yarger v. ING Bank, fsb*, 285 F.R.D. 308, 323 & n.20 (D. Del. 2012), the Court need not address the DCFA claim.  (D.I. 13 at 18; Tr. at 23-24)  With respect to this claim, Plaintiff intends to preserve its argument "in the event that intervening precedent causes the Court to revisit its opinion or in the event of post-judgment appeal in *Yarger*."  (D.I. 13 at 18)